Argued and submitted December 2, 2002, reversed and remanded on petition; cross-petition dismissed as moot March 13, 2003

HALLMARK INNS & RESORTS, INC.,
an Oregon corporation,
*Petitioner - Cross-Respondent,*

*v.*

CITY OF LAKE OSWEGO,
*Respondent - Cross-Petitioner.*

2002-049; A119553

65 P3d 300

Mary Ellen Page Farr argued the cause and filed the briefs for petitioner - cross-respondent.

Evan P. Boone argued the cause for respondent - cross-petitioner. With him on the brief was David D. Powell, Lake Oswego City Attorney.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Hallmark Inns and Resorts, Inc. (Hallmark) seeks review of a Land Use Board of Appeals (LUBA) decision affirming the City of Lake Oswego's (the city) denial of Hallmark's request for modification of a condition attached to a development permit issued to Hallmark in 1993. We reverse and remand for LUBA to consider the predicate question of whether the challenged condition applied to a paved pathway[1] across Hallmark's property.

We take the relevant facts from LUBA's opinion. The development permit granted Hallmark's request for approval to construct its corporate headquarters. One of the several conditions attached to the approval, Condition B(2), required Hallmark, before the issuance of a city occupancy permit, to "[p]rovide easements for all public walkways/sidewalks and public utilities, including storm water retention and water quality facilities, to the satisfaction of [the] City Engineer." The pathway at issue in this proceeding was constructed along the front of the company's building between Collins Way and Hallmark Drive. It was open to the public from early 1994 to mid-1996 when, due to vandalism, Hallmark constructed a fence at the western edge of the property at its connection to Collins Way. The fence cut off access to Hallmark's property from the west.[2] After the fence was constructed, the city cited Hallmark for failing to comply with

---

[1] We describe the disputed pedestrian path as a "pathway" because there is some disagreement between the parties over whether pathway conforms to the definition of "walkway" in the city's code.

[2] The following is a diagram of the property; it is not to scale:

the condition requiring a public pathway. Hallmark challenged the condition, and the parties agreed to hold the citation in abeyance while seeking judicial review. Hallmark filed a declaratory judgment action in Clackamas County, seeking a judgment that it was not required to provide an easement for the pathway. In the alternative, Hallmark asked for an award of compensation for a "taking" of its private property for the public pathway. The trial court abated the matter pending resolution of Hallmark's request to modify the disputed condition. We understand that the circuit court proceeding remains pending.

This proceeding arises from Hallmark's request to the city in 1999 seeking a declaration that the condition requiring a public easement be deemed not applicable to the disputed pathway. Included in the application was an alternative request to modify the condition to remove the requirement of an easement. In October 2000, the city's Development Review Commission (the commission) denied the request for modification. The commission's order included a footnote reciting that the city manager was entitled to interpret the meaning and scope of approvals and further stated that the manager did not agree with Hallmark's assertion that no easement need be given for the pathway. The order concluded, *inter alia*, that the modification of the condition would violate portions of the development code controlling "walkways" and "accessways."

Hallmark appealed the commission's decision to the city council. The council affirmed the commission's decision. In so doing, the council said that there was substantial evidence in the record to show that Condition B(2) was designed to require a public easement over the pedestrian pathway. The city's findings added that, even if an easement had not been a specific condition of approval, the development approval included a requirement for public pedestrian and bicycle access across the property. The city also found that a public need existed for the pathway and that the requirement was "roughly proportional" to the impacts on the pedestrian and bicycle system created by the development of the property as a common campus and by the potential for more than 44 employees and customers working or doing business at the site. We understand that the latter conclusion was

intended to answer Hallmark's claim that the easement, if required, was not proportional to the burdens occasioned by the development and, therefore, amounted to a taking of its property without just compensation under the Fifth Amendment to the United States Constitution under the theory announced in *Dolan v. City of Tigard*, 512 US 374, 114 S Ct 2309, 129 L Ed 2d 304 (1994). Hallmark then filed an appeal with LUBA.

In its first assignment of error before LUBA, Hallmark asserted that the city erred in determining that the requested modification did not meet Lake Oswego Development Standard (LODS) 20, "because that standard does not require that Hallmark deed its property to the city to provide connection between two public streets." In Hallmark's second assignment of error it asserts that the city erred in concluding that the required deeded easement "was not an unconstitutional taking of Hallmark's property without just compensation."

In support of its first assignment of error, Hallmark argued that the city code does not require an easement for the pathway. Hallmark explained that the city confused "accessway," as defined in LODS 20.015(3), with "walkway," as defined in LODS 20.015(2). We need not discuss further specifics of Hallmark's arguments except to say that the company asserted that the city misinterpreted its code. LUBA rejected Hallmark's ordinance-based arguments and concluded that Hallmark's request to modify the condition requiring a public easement for the disputed pathway would violate portions of the city's development ordinance. LUBA also rejected Hallmark's claim that the disputed condition resulted in a taking of its property.

■ Before reaching its conclusion affirming the city's decision, LUBA made the critical preliminary determination that Hallmark did not assign error to the city council's decision that the disputed condition required an easement to the pathway to ensure public access.[3] LUBA stated that

---

[3] Before arriving at that conclusion, LUBA opined that the city's decision was equivocal as to whether the condition actually applied to the disputed pathway. LUBA nonetheless rejected the city's claim that the determination of whether the condition applied was settled with the city manager's determination as recited in

"petitioner's assignments of error appear to take as given that Condition B(2) applies to the disputed walkway and requires that petitioner provide an easement to the city for the disputed walkway. Therefore, we do not address this seemingly critical threshold issue, even though resolution of that question in petitioner's favor could make the remainder of petitioner's assignments of error moot."

On review, Hallmark disagrees with LUBA's characterization of its challenge before LUBA. Hallmark says it preserved its claim that the condition requiring it to provide easements for streets and pathways did not apply to the pathway in front of its headquarters.[4] It cited portions of its petition for review before LUBA, stating, in sum, that the city misconstrued its ordinance when it interpreted its code to require that Hallmark provide a deeded easement for the pathway. In addition, Hallmark points out that LUBA commented, in regard to Hallmark's second assignment of error, that the board assumed for the purposes of appeal that "Condition B(2) requires [Hallmark] to deed the city an easement for the disputed [path]way."

Hallmark adds that the city understood the matter was before LUBA because the city's brief opens with a statement that the city did not agree that the pending proceeding included an appeal of the interpretation of the development condition. The city's argument regarding the applicability of Condition B(2) to the disputed pathway was based on its view that the issue was decided by the city manager, and Hallmark failed to appeal the manager's decision. Regardless of the specifics of the city's defense, at oral argument before

the Development Review Commission's determination. LUBA found that the city council reached its own decision that Condition B(2) did apply to the disputed pathway, in part because neither the commission's nor the council's decision purported to give the city manager's decision preclusive legal effect. The effect of LUBA's determination is that any challenge to the city's conclusion that the condition applied to Hallmark's pathway would be timely and would not be precluded by the fact that the city's manager's view was expressed in 2000.

[4] In addition, Hallmark asserts that the error is "apparent on the face of the record" in that the matter was a central issue in the case and LUBA was unable to decide Hallmark's second assignment of error asserting that the condition amounts to a "taking" of its property without deciding whether the disputed condition applied to the walkway. *See* ORAP 5.45(4)(b). Because we conclude that the matter was before LUBA for review, we do not address Hallmark's assertion under ORAP 5.45(4)(b).

this court, counsel for both Hallmark and the city stated that the matter of whether the condition applied to the disputed pathway was argued before LUBA, although they disagreed on whether LUBA correctly refused to consider the matter.

Our review of Hallmark's petition for review before LUBA indicates that Hallmark indeed asserted that Condition B(2) did not apply to the disputed pathway. The argument appeared in Hallmark's recitation of the relevant facts and in the course of its discussion to LUBA of its first assignment of error.[5] For its part, the city responded to Hallmark's first assignment of error as though Hallmark did assert error in the conclusion that Condition B(2) applied to the disputed pathway. The city's response shows that it understood Hallmark to have raised the question of whether the disputed condition applied to the pathway in front of Hallmark's building.

We agree with LUBA that a determination that Condition B(2) does not apply to the disputed pathway in front of Hallmark's headquarters building would render Hallmark's remaining challenges moot. If the condition does not apply to Hallmark's pathway, there would be no required public easement and therefore no need either to modify the condition or to seek compensation under a taking theory. We do not agree with LUBA's refusal to address the question.

While LUBA is correct that Hallmark did not assign error to the city's decision, Hallmark's failure to draft a specific assignment of error so asserting does not mean that the

---

[5] In its summary of the facts in the petition for review before LUBA, Hallmark included references to evidence in the record supporting its claim that "Hallmark always understood the interest [in the pathway] to be in the nature of a revocable license for the residents of Collins Way to walk across the property." The company acknowledged that it left the walkway open for access from Collins Way but added, "Hallmark always considered the property its private property and maintained signs at the entrance from Collins Way stating that the walkway was private property and that 'permission to pass' was 'revocable at any time.'"

In its first assignment of error, Hallmark made the general claim that the city "does not require that property owners deed to the city easements for walkways—which provide access to entrance to buildings on site." It further argued that "the city council has interpreted its ordinance improperly to include requirements not set out in the ordinance." It supported that argument with citations to ordinance provisions that it claimed illustrate that the city misconstrued its code when imposing the easement condition.

issue was not before LUBA for review. In past proceedings, LUBA has addressed what it identifies as "arguments" within assignments of error, and it is apparent that LUBA has considered arguments that were not included under a separately stated assignment of error. *See, e.g., Lange-Luttig v. City of Beaverton,* 39 Or LUBA 80, 82-83 (2000) (addressing arguments in the "summary of material facts" and the "summary of argument" but not stated under an assignment of error); *Heiller v. Josephine Co.,* 23 Or LUBA 551, 554 (1992) (LUBA would consider only the arguments stated clearly enough to afford respondents an opportunity to respond where the petitioner failed to set out assignments of error under separate headings as required by OAR 661-010-0030(3)(d) (1998)); *Deschutes Development v. Deschutes Cty.,* 5 Or LUBA 218, 220 (1982). Our own case, *Eckis v. Linn County,* 110 Or App 309, 311, 821 P2d 1127 (1991), holds that a failure to set out assignments of error in the petition for review before LUBA will not warrant striking the petition or dismissing the appeal where "the claimed errors are discernible from the petition."

As discussed above, Hallmark argued in its petition for review before LUBA that the condition did not apply to the pathway. The city responded to that argument. Whether or not Hallmark captured its argument in a separate assignment of error, the argument about applicability of the condition was presented to LUBA and the city. There was, then, a fair opportunity to address the issue. *See Northwest Natural Gas Co. v. Chase Gardens, Inc.,* 328 Or 487, 499-500, 982 P2d 1117 (1999); *Gildroy v. Board of Tax Service Examiners,* 184 Or App 227, 56 P3d 441 (2002).[6]

In addition, Hallmark's first assignment of error before LUBA was sufficiently broad to include, as an additional and related argument, Hallmark's claim that the condition was inapplicable to the disputed pathway. Again, the

---

[6] We note that LUBA's administrative rules do not appear to require that each legal argument be made under a separate assignment of error. OAR 661-010-0030(4)(d), addressing the contents of a petition for review, states only that the petition must "set forth each assignment of error under a separate heading. Where several assignments of error present essentially the same legal questions, the argument in support of those assignments of error shall be combined." "Assignment of error" and "argument" are not further defined in LUBA's rules.

assignment of error stated that, "[the city] erred in determining that the proposed modification did not meet [LODS] 20 because that standard does not require that Hallmark deed its property to the city to provide connection between two public streets."

■      Hallmark's statement that LODS 20 "does not require that Hallmark deed its property to the city to provide a connection between two public streets" is an assertion common to both a claim that the proposed modification of the condition would not violate a city standard and a claim that the city standard does not support (or require) that the disputed pathway be established through a public easement. We regard Hallmark's argument asserting the disputed condition did not apply to its pathway to be "discernible from the petition" before LUBA. *Eckis*, 110 Or App at 311. We conclude that Hallmark's first assignment of error before LUBA and the arguments under that assignment of error were sufficient to raise the matter of the applicability of Condition B(2), and LUBA erred in refusing to consider it.[7]

Our conclusion requires that we remand this matter to LUBA for reconsideration. Because of our disposition, we need not reach Hallmark's remaining assignments of error or the city's cross-petition.

On petition, reversed and remanded; cross-petition dismissed as moot.

---

[7] We add, however, that LUBA may be entitled to specify the circumstances under which it will refuse to consider arguments. Its basis for doing so must be sufficiently transparent to permit parties appearing before it to understand in advance the limits of LUBA's tolerance for imprecisely stated claims of error in land use decisions. Given the circumstances in this case, that explanation is missing.